STATE OF NEW YORK, Appellant, v WHITNEY G. WILKES, Respondent.

Third Department, June 17, 1976

*Louis J. Lefkowitz, Attorney-General (Lawrence J. Logan* and *Ruth Kessler Toch* of counsel), for appellant.

*Cooper, Erving & Savage (Freling H. Smith* of counsel), for respondent.

SWEENEY, J. P. Intermittently from September, 1960 to June, 1969 defendant attended the State University of New York at Albany. He received his B. S. degree in 1968 and resumed studies for a Masters degree. While a student, defendant received approximately $6,900 in various student loans of which a total of $3,892.36 were National Defense Student Loans and the remainder, a loan for $3,000 was guaranteed by the New York Higher Education Assistance Corporation. By the terms of the notes, the first installment was due June, 1970, one year after defendant ceased to be a student. On September 11, 1969 defendant became employed by the New York State Education Department at an annual salary of $9,000. He is presently earning $11,000. On January 26, 1970, approximately five months before the first payment was due on the notes, defendant filed a petition in bankruptcy in the Federal court, listing as debts the $6,900. Defendant also listed various small bills totaling some $147. On this appeal we are concerned only with the notes totaling $3,892.36. Plaintiff advised the bankruptcy court by letter that it did not intend to file objections to the discharge of its claim, but reserved its right to State court action to recover the amount owed. Defendant was found insolvent and his debts discharged on October 8, 1970.

The instant action was commenced on January 11, 1972 and defendant asserts the affirmative defense of discharge in bankruptcy. Special Term granted defendant's motion for summary judgment and denied plaintiff's cross motion therefor on the

ground that the student loans were provable debts and allowable, and they, therefore, were discharged in bankruptcy. Special Term also concluded that plaintiff's sole remedy was to have filed an objection to such discharge in the bankruptcy court. This appeal ensued.

It is plaintiff's contention that defendant's discharge in bankruptcy did not release him from his obligation to pay his student loans and that the question of whether or not the loans were discharged is properly before this court. Defendant, on the other hand, maintains the bankruptcy discharge is a complete defense to this action and the question of whether the loans were discharged is not properly before this court.

As the latter issue is the more easily disposed of, we will consider it first. While the Bankruptcy Act was amended in 1970 and conferred power on the bankruptcy courts to determine the dischargeability of debts (US Code, tit 11, § 11, subd [a], par [12]), such provision did not become effective until December 18, 1970. Prior thereto the effect of a discharge was determined in the court in which a debt was proceeded upon. (*Matter of Lowe,* 36 F Supp 772, 773.) Since defendant's petition was filed prior to the effective date of the amendment, this court has authority to pass upon the question as to whether the loans were discharged or not by the bankruptcy proceedings.

The more vexing issue is whether the bankruptcy discharge is a valid defense to this action. The notes in question contain the following pertinent conditions.

"If the maker undertakes service as a full-time teacher in a public elementary or secondary school * * * the amount of this note shall be reduced at the rate of 10 percentum of such amount plus interest thereon which was unpaid on the first day of such service for each complete academic year of such service, up to a maximum of 50 percentum of the principal plus interest thereon.

"In the event of the maker's total and permanent disability or death, the unpaid indebtedness hereunder shall be cancelled."

It is on the basis of these conditions that plaintiff contends the notes were not provable claims under the Bankruptcy Act because they did not constitute a fixed liability. In other words, plaintiff maintains that since the defendant might in the future commence teaching in a public school or he might

become permanently disabled, or die, the amount due on the notes was not subject to reasonable estimation.

A discharge in bankruptcy releases the bankrupt only from all "provable" debts. (US Code, tit 11, § 35, subd [a].) The categories of provable debts are enumerated in subdivision (a) of section 63 of the Bankruptcy Act (US Code, § 103, subd [a]), the pertinent part of which reads as follows:

"§ 103. Debts which may be proved.

"(a) Debts of the bankrupt may be proved and allowed against his estate which are founded upon (1) a fixed liability, as evidence by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition by or against him, whether then payable or not, with any interest thereon which would have been recoverable at that date or with a rebate of interest upon such as were not then payable and did not bear interest * * * (8) contingent debts and contingent contractual liabilities".

If a debt is contingent, however, it must also meet the test of allowability under subdivision [d] of section 57 of the Act (US Code, tit 11, § 93, subd [d]) which provides as follows:

"(d) Claims which have been duly proved shall be allowed upon receipt by or upon presentation to the court, unless objection to their allowance shall be made by parties in interest or unless their consideration be continued for cause by the court upon its own motion: *Provided, however,* That an unliquidated or contingent claim shall not be allowed unless liquidated or the amount thereof estimated in the manner and within the time directed by the court; and such claim shall not be allowed if the court shall determine that it is not capable of liquidation or of reasonable estimation or that such liquidation or estimation would unduly delay the administration of the estate or any proceeding under this title."

From an examination of these statutes, together with pertinent case law (cf. *Maynard v Elliott,* 283 US 273; *Matter of Crisp,* 521 F2d 172), we are constrained to conclude that the liability on the debts in question was fixed and existed at the time defendant filed his petition in bankruptcy. They were, therefore, provable. In any event, the fact that plaintiff did not file a proof of claim cannot be utilized to defeat and upset the discharge. To hold otherwise would frustrate the object of the Bankruptcy Act. *(Matter of Hilton,* 104 F 981.) In our view, Special Term properly granted summary judgment to defendant.

The order should be affirmed, without costs.

LARKIN, J. (dissenting). We dissent. The majority has found, and we agree, that the effect of the defendant's bankruptcy on the debts in question is the issue before this court. Although the majority opinion clearly sets forth the facts giving rise to this lawsuit, it is necessary in this dissent to further discuss the chronology of events.

Intermittently from 1960 to 1969, defendant attended the State University of New York at Albany, obtained a B. S. degree in 1968 and studied for a Masters degree until June 11, 1969, when he left the school. He was financed in great part by student loans in various forms and received amounts including $3,892.36 in student loans and another $3,000 loan guaranteed by the New York Higher Educational Assistance Program. Within seven months after leaving school, and five months before any payment whatsoever was due on the loans in question, defendant filed a petition in bankruptcy, listing as his debts the obligations recited herein and other small debts totaling $147. He listed assets of $732. Ironically, shortly after leaving school defendant became employed by the State of New York at $9,000 (now $11,000) per annum. Without objection he was discharged as a bankrupt.

The majority, in affirming Special Term which granted the defendant's motion to dismiss the complaint brought by the plaintiff, State of New York, to recover on the obligations, states while the facts and circumstances give rise to some suspicion, there is no testimony or direct proof of fraud. In our view, the patent and inescapable conclusion is that defendant, after receiving his education from the State of New York, shed his cap and gown and deliberately sought bankruptcy to avoid honoring loans, the first payment upon which was not even due.

The majority conclude that the actions of the defendant come within the letter of the applicable laws and thus grant judgment in his favor. Mere adherence to the letter of the law should not provide an absolute refuge, for it is not the words of the law but rather its internal sense and spirit that makes the law. The applicable laws in the instant case, like all laws, consist of two parts—the letter of the law and the sense or reason of the law; and the profit in the law is in its sense and reason and not in its letter. Clever and cunning men will always find ways to circumvent the law by adherence to its letter, and words alone are inadequate to deal with all foresee-

able consequences of human conduct. It is this court's duty to say what the law is by applying the sense and reason of the law to its letter.

Our function as a court is to interpret the will of the legislative body that created the law. This, we submit, the majority has not done in the instant case. One cannot reason that the will of the Legislature was to provide loans to students with repayment terms to commence one year after finishing their studies, fully aware of the fact that a student could, as this student did, practically march from the graduation recessional to Bankruptcy Court and there be adjudicated a bankrupt because at that time he lacked property "sufficient in amount to pay his debts" (US Code, tit 11, § 1, subd [19]).

Most students at the time of their graduation fully meet the basic requirements of bankruptcy; namely, that they lack "property sufficient to pay their debts". Reason dictates that the Legislature was aware of this when it provided that repayment was to commence one year after the student left school. It is in this light, and applying these principles, that this court should determine whether the instant debts of the defendant are uncollectible because they properly could have been proved and liquidated in bankruptcy.

A discharge in bankruptcy shall release a bankrupt from all his provable debts (US Code, tit 11, § 35, subd [a]) and the statutes provide that contigent debts and contigent contractual liabilities are provable debts if they meet the test of allowability (US Code, tit 11, § 103, subd [a], par [8]; § 93, subd [d]). The majority find that "the liability on the debts in question was fixed and existed at the time defendant filed his petition * * * and were, therefore, provable" and, in support of their position, cite *Maynard v Elliott* (283 US 273) and *Matter of Crisp* (521 F2d 172). We differ from the majority in that we find that the loans in question were "not capable of liquidation or of reasonable estimation" at the time of the filing of the petition and thus cannot be allowed (US Code, tit 11, § 93, subd [d]). The notes in question provide that the entire debt is discharged if the defendant becomes totally and permanently disabled or dies. Each of the notes further provides that the annual installment of principal may be reduced by up to 50% if the defendant should teach for a sufficient period of time. Had the defendant become a teacher, instead of a bankrupt, the total amount due would have been reduced by 10% for each and every year that he taught up to a

maximum of 50% of the total of the loan. In fact, the terms of the note, under which some or all of the sums in question were advanced, allowed the defendant to reduce the total amount due by 15% for each year of teaching service in designated school systems with high concentrations of low income families, or during which he taught handicapped children, *with no specified maximum allowable deduction.* By such service, defendant could have canceled the entire amount advanced under this agreement. In our view, these facts and contingencies are events beyond the control of the creditor (New York State) and dependent upon events so fortuitous as to make it uncertain if liability will ever attach and, thus, the debts cannot be allowed in bankruptcy *(Maynard v Elliott, supra; Thompson v England,* 226 F2d 488).

In our opinion, the very cases cited by the majority lend support to this dissenting view. In *Maynard v Elliott (supra,* p 278) the court stated: "The contingency of the bankrupt's obligation may be such as to render any claim upon it incapable of proof. It may be one beyond the control of the creditor, and dependent upon an event so fortuitous as to make it uncertain whether liability will ever attach". The court in *Maynard* found that the contingencies in that case were within the control of the creditor, unlike the instant case, where the contigencies, a teaching career, etc., were within the control of the debtor Wilkes and not the creditor New York State.

The second case cited by the majority, *Matter of Crisp* (521 F2d 172), also supports this dissent and, in our view, cogently sets forth the test to be applied in cases such as these. In *Crisp,* a very recent decision (July 31, 1975), the court, in addressing itself to the very point in question herein, whether the debt "is now capable of liquidation or of reasonable estimation", stated at page 176: " 'What infusion of contigency will vitiate a claim is at best a question of degree [see *Maynard v. Elliott,* 283 U. S. 273, 277-78, 51 S. Ct. 390, 75 L. Ed. 1028 (1931)], though there is a leaning toward allowance in aid of the purpose of the statute to relieve the honest debtor.' *Brown v. O'Keefe, supra,* 300 U.S. at 606, 57 S. Ct. at 548. The decision 'ultimately rest[s] upon the exercise of judicial discretion in light of the circumstances of the case'. 3A Collier, *supra,* par 63.30, at 1912."

Applying the general principles recited in this dissent to the test promulgated in *Crisp,* we reach a different result from the

majority. In the context of the fact that the primary purpose of the Bankruptcy Act is to relieve the honest debtor, and considering the circumstances of the case (the filing of bankruptcy almost immediately upon leaving school and the contingent nature of the notes) and exercising judicial discretion as required by *Crisp,* we conclude that the debts in question are not capable of liquidation or reasonable estimation and therefore that the bankruptcy of the defendant is no defense. Doubts in this regard should be resolved in the light of the purpose of the Bankruptcy Act "to convert the assets of the bankrupt into cash for distribution among creditors and then to relieve the *honest debtor from the weight of oppressive indebtedness* and permit him to start afresh free from the obligations and responsiblities consequent upon business misfortunes" *(Williams v United States Fid. Co.,* 236 US 549, 554-555; emphasis supplied). The court in *Crisp* considered this direction and in their decision specifically found that "Crisp is apparently a typical 'honest debtor'" (p 177). The majority have failed to make such finding in the instant case and with their implicit determination in this respect we agree.

The judgment should be reversed, and matter remitted for proceedings not inconsistent herewith.

KANE and MAHONEY, JJ., concur with SWEENEY, J. P.; LARKIN and HERLIHY, JJ., dissent and vote to reverse in an opinion by LARKIN, J.

Order affirmed, without costs.