In the matter of John Scott Cutter
MILLS, Bankrupt.

BOARD OF REGENTS OF the UNIVER-
SITY SYSTEM OF GEORGIA for and
on Behalf of the Medical College of
Georgia, Plaintiff,

v.

John Scott Cutter MILLS, Defendant.

Civ. A. No. 177–202.

United States District Court,
S. D. Georgia,
Augusta Division.

May 24, 1978.

Alfred L. Evans, Jr., Senior Asst. Atty.
Gen., State of Georgia, Atlanta, Ga., for
plaintiff.

J. Gabriel Angaran, Harrison & Roper,
Martinez, Ga., for defendant.

## ORDER

ALAIMO, Chief Judge.

This appeal presents the issue of whether
a bankrupt is entitled to be discharged from
student loans he made while attending the
Medical College of Georgia. Concluding
that the Bankruptcy Judge reached the
proper result in declining to discharge these
loans, this Court affirms.

### I.

The facts giving rise to the instant case
are undisputed. John Scott Cutter Mills
attended the Medical College of Georgia
from September, 1971, until June, 1975, at
which time he received the degree of Doctor
of Medicine. In order that he might begin
and continue his medical education, Mills
signed student loans totaling $8,400 from
the Health Professions Student Loan Pro-
gram and the Robert Wood Johnson Foun-
dation Loan Program. These loan pro-
grams were administered through the fi-
nancial aid office at the Medical College of
Georgia. After graduation, Mills was un-
employed until October, 1975. In October,
1975, he began a three-year residency in
psychiatry at the Medical College of Geor-
gia.

On May 20, 1977, Dr. Mills filed a volun-
tary petition in bankruptcy in South Caroli-
na. The case was transferred to the South-
ern District of Georgia on May 24, 1977.
The Board of Regents for the University
System of Georgia appeared in the bank-
ruptcy proceeding seeking to have Mills'
student loans excluded from the Bankrupt-
cy Court's order of discharge.

During the proceedings below, it became clear that these student loans totaled $8,400 plus three per cent (3%) interest and were payable over a ten-year period, the first payment not becoming due until two years after graduation. The promissory note Mills signed for the loan ($700) during the 1971–1972 academic year becomes forgiven if defendant Mills dies, is permanently disabled, or works in a shortage area for about seven years. [*See* Record at 66, Article IV, paragraphs C and F(1).] The Bankruptcy Judge found that the promissory notes for Mills' other student loans contained the following provisions:

"1. In the event of the total and permanent disability or death, the unpaid indebtedness hereunder shall be canceled.

"2. The maker is entitled to have a portion of his loan cancelled for each full year he practices medicine, osteopathy, dentistry, or optometry in a designated shortage area in the United States, Puerto Rico or the Virgin Islands, and the appropriate state health authority certifies that the practice has helped to meet the area's shortage and need of physicians, dentists or opticians." [1]

The Bankruptcy Judge's conclusions of law stated in part, as follows:

"To argue that to practice in such shortage areas would assure the Medical College of Georgia of receiving full payment as a result of the bankrupt's efforts and services and therefore there would be no contingency as to the amount, is a play on words not factually sound, for in this event there would be no payment or other consideration moving directly to the lender." [2]

The Bankruptcy Judge held that these students loans were not capable of reasonable estimation; therefore, they were not dischargeable. From that ruling, defendant has appealed.

## II.

The statutory scheme applicable to this case is aptly summarized in *State v. Wilkes*, 394 N.Y.S.2d 849, 363 N.E.2d 555, 41 N.Y.2d 655 (1977):

"Only provable debts are dischargeable in bankruptcy [Bankruptcy Act § 17(a), 11 U.S.C. § 35(a)]. In general, contingency of an obligation is no bar to provability [Bankruptcy Act § 63(a)(8), 11 U.S.C. § 103(a)(8)]. If, however, an unliquidated or contingent claim 'is not capable of liquidation or of reasonable estimation,' that is, valuation, then the claim may not be allowed [Bankruptcy Act § 57(d), 11 U.S.C. § 93(d)]. And a contingent claim that "has been proved but which has not been allowed is deemed to be not provable [Bankruptcy Act § 63(d), 11 U.S.C. § 103(d)]."

394 N.Y.S.2d 849, 851, 366 N.E.2d 555, 557–558, 41 N.Y.2d 655, 657–658 (1977).

Defendant argues that these student loans are capable of reasonable estimation since, absent defendant's death or permanent disability, the Medical College of Georgia would receive $8,400 whether it is from the defendant or the Secretary of Health, Education and Welfare pursuant to 42 U.S.C. § 294a(f), *supra*. Defendant's argument fails to convince this Court for two reasons. First, defendant has not addressed the possibility that the debt from the 1971–1972 academic year can be completely forgiven. Second, the contingency of repayment which makes such debts not provable is one which, as here, is subject to the control of the bankrupt, and not the creditor.

The United States Supreme Court in *Maynard v. Elliott*, 283 U.S. 273, 51 S.Ct. 390, 75 L.Ed. 1028 (1931), stated:

"The contingency of the bankrupt's obligation may be such as to render any

---

1. These provisions are nearly identical to 42 U.S.C. §§ 294a(d) and (f) as they appeared prior to the 1976 amendments.

2. 42 U.S.C. § 294a(f) may attenuate the validity of this conclusion in that the Secretary of

Health, Education and Welfare reimburses the school under such circumstances. Nevertheless, the result below was correct, and any error concerning this specific conclusion of law was harmless.

claim upon it incapable of proof. It may be one *beyond the control of the creditor,* and dependent upon an event so fortuitous as to make it uncertain whether liability will ever attach. . . . Or, *the contingency may be such as to make any valuation of the claim impossible even though liability has attached.*" (Emphasis added.) 283 U.S. 273, 278, 51 S.Ct. 390, 392, 75 L.Ed. 1028 (1931). *And see,* 3 *Collier on Bankruptcy,* ¶ 57.15[2], n. 14 at 250 (14th ed. 1977).

The Medical College of Georgia does not control whether this defendant will practice in a designated shortage area. Because defendant controls his future career, the amount he will have to pay on his student loans is pure speculation at this time. Therefore, defendant's student loans are not capable of reasonable estimation, and they cannot be discharged in bankruptcy. *See* Bankruptcy Act § 57(d) and § 63(d); 11 U.S.C. § 93(d) and § 103(d), respectively. For the same result in a similar case, see *State v. Wilkes,* 394 N.Y.S.2d 849, 363 N.E.2d 555, 41 N.Y.2d 655 (1977).

One of the goals of the Bankruptcy Act is to achieve an expeditious administration of the bankrupt's estate. *See* 3 *Collier on Bankruptcy,* ¶ 57.15[1], at 247 (14th ed. 1977). Although the amount defendant must personally repay to the Medical College of Georgia will become certain within ten (10) years, such a delay in distributing the bankrupt's estate to his creditors is unacceptable.

### III.

In conclusion, the amount defendant must personally repay on his student loans is so contingent that it is incapable of reasonable estimation or valuation. Furthermore, the length of time it would take before such a valuation could be made is too long to keep the bankrupt's estate open.

Accordingly, the Bankruptcy Judge reached the proper conclusion that these student loans were nondischargeable, albeit for perhaps different reasons. The Court's Order below is hereby affirmed. The Clerk is directed to enter an appropriate judgment.