**GEORGE WASHINGTON UNIVERSITY,**
Appellant,

v.

**Joseph A. GALDI, Appellee.**

**No. 81–1277.**

District of Columbia Court of Appeals.

Argued April 6, 1983.

Decided May 15, 1984.

---

Paul-Noel Chrétien, Washington, D.C., for appellant. David S. Klontz, Washington, D.C., was on the brief for appellant.

No brief was filed and no appearance was entered for appellee.

Before NEWMAN, Chief Judge, and NEBEKER and TERRY, Associate Judges.

TERRY, Associate Judge:

The sole issue presented in this appeal is whether appellee's discharge in bankruptcy released him from his obligation to repay the student loans which he obtained from

appellant. We conclude that it did and affirm the ruling of the trial court.

## I

In 1971 and 1972 appellee received two student loans totaling $5,000 from George Washington University under the National Defense Education Act.[1] In return for the loans, appellee executed two promissory notes, payable to the university. The notes provided that appellee was to repay the loans in quarterly installments over a ten-year period, beginning nine months after he ceased to carry at least one-half of the normal full-time academic workload. The interest on the unpaid balance of the notes would accrue at the rate of three percent. Appellee ceased to carry the required workload in June of 1978 and was billed for his first payment in June of 1979. He failed to make not only this payment but also the next three quarterly payments in September and December of 1979 and March of 1980. On March 31 the university's attorney wrote him a letter stating that a suit would be filed against him if he failed to make arrangements for repayment of the loan by April 21, 1980.

Several months earlier, however, on September 5, 1979, appellee had filed a voluntary petition in bankruptcy in the United States District Court in Newark, New Jersey. The petition listed various debts amounting to $5,503.04, including the debt to George Washington University, which was now $5,037.50 because of the accrued interest. The university was notified that the first meeting of creditors would be held on September 25 and that November 2

would be "the last day for the filing of objections to the discharge of [appellee] and for the filing of complaints, as provided in § 17c(2) of the Bankruptcy Act, to determine the dischargeability of debts claimed to be non-dischargeable under clause (2), (4) or (9) of § 17a of the Bankruptcy Act." On November 5 the bankruptcy court entered an order releasing appellee "from all dischargeable debts."

The university did not contest or participate in the New Jersey bankruptcy proceedings. Instead, on June 5, 1980, it sued appellant for "the amount of the notes not cancelled by bankruptcy, or ... $4,750.00, accrued interest ... attorneys' fees, and other costs of collection, in accordance with the terms of the notes." Appellee asserted in his answer that as a result of the discharge, his debt to the university was "removed under law." When appellee did not appear for trial, the university moved orally for a default judgment. The court reserved a ruling on the motion, however, directing the university to file a memorandum demonstrating why it was entitled to judgment. See Super.Ct.Civ.R. 55(b)(2).[2] After the memorandum was filed, the court entered an order denying the motion and granting judgment for appellee on the ground that the underlying debt had been discharged in bankruptcy.

## II

The university argues that the trial court erred when it ruled that appellee's discharge in bankruptcy barred it from being

---

**1.** National Defense Education Act of 1958, Pub.L. No. 85–864, 72 Stat. 1580. This Act "created the National Direct Student Loan Program in order to provide loans to students enrolled in institutions of higher learning. The program established revolving loan funds at the institutions themselves. Participating educational institutions procure the funds by applying to the federal government and by promising to match one dollar for every nine federal dollars contributed to the fund. The institutions distribute the loan proceeds to those students demonstrating financial need." Comment, *Student Loan Bankruptcy: Establishing "Undue Hardship" in*

*South Dakota,* 27 S.D.L. REV. 282, 283 (1982) (footnotes omitted). Through the Education Amendments of 1972, Pub.L. No. 92–318, § 137(b), 86 Stat. 272, this program has been continued under the provisions of the Higher Education Act of 1965, Pub.L. No. 89–329, 79 Stat. 1219, 20 U.S.C. §§ 1087aa–1087ii (1982).

**2.** It is not clear from the record whether the trial court could have entered a default judgment against appellee. *See Larry M. Rosen & Associates, Inc. v. Hurwitz,* 465 A.2d 1114, 1117–1118 (D.C.1983).

able to recover the amount of the student loans. Specifically, the university contends that under section 17(a) of the Bankruptcy Act of 1898, 11 U.S.C. § 35(a) (1976) (repealed 1979),[3] only provable debts are dischargeable, and that the student loans here in question were not "provable" debts under the Act; therefore, the court erred in not granting its motion for a default judgment. In support of its argument, the university relies heavily on *State v. Wilkes*, 41 N.Y.2d 655, 363 N.E.2d 555, 394 N.Y. S.2d 849 (1977), *rev'g* 52 A.D.2d 454, 384 N.Y.S.2d 530 (1976), and asks us to follow the holding of the New York Court of Appeals.[4]

▮ For a debt to be dischargeable under the 1898 Bankruptcy Act, the bankruptcy court must determine (1) that the debt is provable, Bankruptcy Act § 63, 11 U.S.C. § 103 (1976), and (2) that the debt does not fall within any of the exceptions listed in Bankruptcy Act § 17(a), 11 U.S.C. § 35(a) (1976). *See Copeland v. Emroy Investors, Ltd.*, 436 F.Supp. 510, 515 (D.Del.1977). Section 17(a) lists eight categories of debts which are not affected by a discharge in bankruptcy. In 1970 Congress amended the Bankruptcy Act,[5] giving the bankruptcy courts exclusive jurisdiction to decide, on application of a creditor, whether a particular debt fell within three of those eight categories and was therefore not affected by a discharge. 11 U.S.C.

§ 35(c)(2) (1976);[6] see *Brown v. Felsen*, 442 U.S. 127, 129–130, 99 S.Ct. 2205, 2208–2209, 60 L.Ed.2d 767 (1979). Challenges to the discharge of a debt other than one of those in the three excepted categories, however, as well as to the provability of any debt, could be made by the creditor either in the bankruptcy court (by filing an application for a determination of dischargeability)[7] or in a non-bankruptcy forum (by suing on the debt). *See Schwartz v. Blue*, 40 Colo.App. 298, 300, 573 P.2d 941, 943 (1977); *State v. Wilkes, supra*, 41 N.Y.2d at 657–658, 363 N.E.2d at 557–558, 394 N.Y.S.2d at 851; Countryman, *The New Dischargeability Law*, 45 AM.BANKR. L.J. 1, 30 (1971); Comment, *Bankruptcy: Effect of the 1970 Bankruptcy Act Amendments on the Discharge that Never Was*, 1971 WIS.L.REV. 1174, 1180–1181. *See generally In re Crimmins*, 406 F.Supp. 282 (S.D.N.Y.1975); *Goldsmith v. Overseas Scientific Corp.*, 188 F.Supp. 530 (S.D.N.Y.1960). In this case the university challenges the provability of appellee's debt. It contends that because of certain conditions in the promissory notes permitting him to cancel all or part of his student loan, which were beyond the power of the university to affect or alter, appellee's liability under the notes "is impossible to ascertain or even to approximate."

We will assume that notwithstanding the court's adjudication of appellee as a bankrupt, the provability of the loan which he

---

3. The Bankruptcy Act of 1898 was repealed on October 1, 1979, by the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 401(a), 92 Stat. 2682. In this case, however, the Act of 1898 governs because appellee filed his petition before the effective date of the Bankruptcy Reform Act. *See* Pub.L. No. 95–598, § 403, 92 Stat. 2683.

4. The decision in *Wilkes* has been criticized by other courts and questioned by commentators. *See, e.g., In re Thomas*, 4 Bankr.Ct.Dec. 796, 797–798 (W.D.N.Y.1978); *In re Mwongozi*, 4 Bankr.Ct.Dec. 120, 122–124 (D.Ore.1978); Note, *Student Loan Bankruptcies*, 1978 WASH. U.L.Q. 593, 606–607.

5. Pub.L. No. 91–467, 84 Stat. 990 (1970). For the legislative history of these amendments, *see* 1970 U.S.CODE CONG. & AD.NEWS 4156–4166.

6. These three categories include liability for obtaining money or property by false pretenses or by means of a false financial statement, 11 U.S.C. § 35(a)(2) (1976); liability created by fraud, embezzlement, misappropriation, or defalcation while acting as a fiduciary, 11 U.S.C. § 35(a)(4) (1976); and liability for willful and malicious injury to the person or property of another, 11 U.S.C. § 35(a)(8) (1976).

7. An application could also be filed in the bankruptcy court by the bankrupt debtor to determine the dischargeability of any debt. 11 U.S.C.

listed on his schedule of debts[8] could still be challenged in a non-bankruptcy forum. The weight of authority, however, is to the effect that a student loan such as the one at issue here is provable and therefore dischargeable. *In re Bruce*, 3 B.R. 77 (Bkrtcy.N.D.Ill.1980); *In re Kalnas*, 1 B.R. 193 (Bkrtcy.E.D.Pa.1979); *In re Thomas*, *supra* note 4; *In re Mwongozi*, *supra* note 4; *see In re Harris*, 5 Bankr.Ct.Dec. 593 (S.D.Ohio 1979); *In re Kirch*, 4 Bankr.Ct. Dec. 680 (S.D.Ohio 1978); *In re Woodward*, 15 Collier Bankr.Cas.2d 729 (D.Vt.1978). *Contra, State v. Wilkes, supra; see In re Mills*, 4 B.R. 429 (Bkrtcy.S.D.Ga.1978); *In re Evans*, 4 Bankr.Ct.Dec. 793 (E.D.Pa. 1978). Since we are confronted with a question of federal bankruptcy law, we follow the guidance provided by a majority of the federal bankruptcy courts which have addressed the issue[9] and conclude that appellee's student loan was a provable debt within the meaning of the Bankruptcy Act.

■ Section 63(a) of the 1898 Bankruptcy Act, 11 U.S.C. § 103(a) (1976), lists nine types of debts which may be proved and discharged in bankruptcy. This section, however, "purports to be an enumeration of classes of provable claims—not an enumeration of characteristics which must inhere in every claim proved." *Maynard v. Elliott*, 283 U.S. 273, 277, 51 S.Ct. 390, 391, 75 L.Ed. 1028 (1931). Among the debts listed in section 63(a) are those "which are founded upon (1) a fixed liability, as evidenced by ... an instrument in writing, absolutely owing at the time of the filing of the petition ... whether then payable or not ... (4) an open account, or a contract express or implied ... [and] (8) contingent debts and contingent contractual liabilities...." All the courts which have ruled that a student loan was a provable debt have done so on the ground that it was a fixed liability, evidenced by an instrument, which was owing at the time the petition was filed. *In re Bruce, supra*, 3 B.R. at 79–81; *In re Kalnas, supra*, 1 B.R. at 195; *In re Thomas, supra* note 4, 4 Bankr.Ct. Dec. at 797; *In re Mwongozi, supra* note 4, 4 Bankr.Ct.Dec. at 121–124; *see In re Harris, supra*, 5 Bankr.Ct.Dec. at 595. Some courts have added as alternative holdings that the student loan was a provable debt because it was based on a contract or was a contingent debt capable of estimation. *In re Thomas, supra* note 4; *In re Mwongozi, supra* note 4. We are persuaded that a student loan such as the one at issue here was a fixed liability within the meaning of the 1898 Bankruptcy Act, notwithstanding that all or part of the debt might have been canceled or its repayment extended if appellee had died or engaged in military or charitable service.[10]

The only other question for us to consider is whether the student loans fell within any of the exceptions to discharge under section 17(a) other than (a)(2), (a)(4), and (a)(8).[11] The university did not allege any of the remaining exceptions to discharge, and our review convinces us that none of them apply to appellee's debt.[12] Thus we

§ 35(c)(1) (1976). It is not clear whether appellee filed such an application in this case.

**8.** In his bankruptcy petition appellee listed his debt to the university as an unsecured claim without priority.

**9.** *See Paul v. United States*, 301 A.2d 226, 228 (D.C.1973).

**10.** Provability is no longer an issue under the Bankruptcy Reform Act. *See* 11 U.S.C. § 727(b) (1982).

**11.** See note 6, *supra*.

**12.** In 1976 Congress enacted legislation restricting the dischargeability of guaranteed student loans under the Higher Education Act of 1965. Education Amendments of 1976, Pub.L. No. 94–482, § 439A, 90 Stat. 2141, 20 U.S.C. § 1087–3 (1976) (repealed 1978). This legislation, however, did not affect the dischargeability of student loans under the National Direct Student Loan Program, the type of loan involved in this case. *See In re Bruce, supra*, 3 B.R. at 82; Comment, *supra* note 1, 27 S.D.L. Rev. at 286–287; Note, *Student Loan Bankruptcies*, *supra* note 4, 1978 Wash.U.L.Q. at 601. Under the Bankruptcy Reform Act of 1978, student loans, whether guaranteed or not, are excepted from discharge within the first five years after they are due unless the debtor can demonstrate undue hardship. 11 U.S.C. § 523(a)(8) (1982). *See Ayres & Sagner, The Bankruptcy Reform Act*

hold that the trial court was correct when it ruled that appellee's discharge in bankruptcy barred the university from suing to collect on the two promissory notes.

*Affirmed.*

*and Student Loans: Unraveling New Knots,* 9 J. COLL. & U.L. 361 (1983) (discussing the dischargeability of educational loans under the Bankruptcy Reform Act of 1978).